AO 243 (Rev. 01/15)                                                                                               Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
### SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | 98cr178-1 |
|---|---|---|

| Name *(under which you were convicted)*:  Robert Earl Martin | Docket or Case No.: No. ▮▮▮▮▮ |
|---|---|

| Place of Confinement: F.C.I. Butner # 2 | Prisoner No.: 39869-066 |
|---|---|

| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* |
|---|---|
| v.  Robert Earl Martin | |

## MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    The Eastern District Of Philadelphia

    (b) Criminal docket or case number (if you know): Case No. 98-178-1

2.  (a) Date of the judgment of conviction (if you know):  July 1,1998

    (b) Date of sentencing: August 2nd,2001

3.  Length of sentence:  Life

4.  Nature of crime (all counts): Armed bank robbery,in violation of 18 U.S.C.§ 2113(d)(Count one). And using or carrying a firearm during or in relation to a"crime of violence", in violation of 18 U.S.C. § 924 (c)(1)(Count two).

5.  (a) What was your plea?  (Check one)
    (1)  Not guilty [x]          (2)  Guilty [ ]          (3)  Nolo contendere (no contest) [ ]

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

    I was found guilty by jury

6.  If you went to trial, what kind of trial did you have?  (Check one)      Jury [x]      Judge only [ ]

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?      Yes [ ]      No [x]

8.  Did you appeal from the judgment of conviction?      Yes [x]      No [ ]

9. If you did appeal, answer the following:

(a) Name of court:    To the Court of Appeals for the third Circuit

(b) Docket or case number (if you know):    01-3082

(c) Result:    Affirmed

(d) Date of result (if you know):    July 30th,2002

(e) Citation to the case (if you know):    46 Fed.Appx.119, 2002 U.S.App.Lexis 15317(3d ci

(f) Grounds raised: Erroneous Jury Instruction, and Prosecutor Misconduct,

and Apprendi Issues.

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes [x]    No [ ]

If "Yes," answer the following:

(1) Docket or case number (if you know):    Case No. 538 U.S. 915

(2) Result:    denied

(3) Date of result (if you know):    2003

(4) Citation to the case (if you know):    2003 U.S.Lexis 2117 (2003)

(5) Grounds raised:

Same as above

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

Yes [x]    No [ ]

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:    Eastern District Of Philaelphia

(2) Docket or case number (if you know):    2005 U.S.Dist.Lexis 9302

(3) Date of filing (if you know):    I know the date of results,May 16th,2005

(4) Nature of the proceeding:    § 2255

(5) Grounds raised: Ineffective assistant of trial Counsel,Prosecutor

missconduct,Apprendi violations,and violation of Federal rules

United States v.Martin,2000 U.S.Dist. Lexis 2054,2000 WL 233217,*

1-2(E.D.Pa.2000):

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

    Yes ☒    No ☐

(7) Result:      denied

(8) Date of result (if you know):      May 16th,2005

(b) If you filed any second motion, petition, or application, give the same information:

    (1) Name of court:    The Court Of Appeals for the Third Circuit

    (2) Docket of case number (if you know):    16-2623 and 18-3670

    (3) Date of filing (if you know):   2016 and 2017

    (4) Nature of the proceeding: Requesting to file a second or successive 2244

    (5) Grounds raised:

         Jhonson and Sessions v Dimaya claims.

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

    Yes ☐    No ☒

(7) Result:      denied

(8) Date of result (if you know): May 10th,2018,and December 20th,2018

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1) First petition:      Yes ☐    No ☒

    (2) Second petition:     Yes ☐    No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

    Second or Successive petitions is not appealable

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** In light of Davis,the movant sentence violates due process

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Second-degree murder is not categorically a"crime of violence" under the elements clause,18 U.S.C.§ 924(c)(3)(A). And,pursuant to Davis,second-degree murder cannot constitute a crime of violence under the residual clause,section 924(c)(3)(B),as that residual clause is unconstitutionally vague.

(b) **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2)  If you did not raise this issue in your direct appeal, explain why: The Supreme Court holding in Jhonson,Dimaya,and Davis was not ruled on until 2016/2018/2019.

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:            N/A

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):            N/A

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☒

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☒

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): N/A

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

**GROUND TWO:**      N/A

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

N/A

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____ N/A _____

(3)  Did you receive a hearing on your motion, petition, or application?

Yes [ ]    No [x]

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes [ ]    No [x]

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes [ ]    No [x]

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

**GROUND THREE:** N/A
_____

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

N/A

**(b)  Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐      No ☒

    (2)  If you did not raise this issue in your direct appeal, explain why:

                                                                      N/A

**(c)  Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☒

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:    N/A

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

                                               N/A

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐      No ☒

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐      No ☒

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐      No ☒

    (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:    N/A

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

                                             N/A

(7)    If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

The, Davis issue was rendered June 24th,2019,therefore, this petition is timely filed

---

**GROUND FOUR:**                                    N/A

---

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

---

(b)    **Direct Appeal of Ground Four:**

    (1)    If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☒

    (2)    If you did not raise this issue in your direct appeal, explain why:

(c)    **Post-Conviction Proceedings:**

    (1)    Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☒

    (2)    If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:    N/A

Name and location of the court where the motion or petition was filed:

        N/A

---

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

        N/A

---

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):   N/A

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

The Jhonson,Dimaya,and Davis decisions was not previously not available.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?   Yes ☒   No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.  I have a 2241 petition now pending in the 4th,circuit. Case No. 5:19-HC-2215-BO. Iam challenging that iam not a three-strike candidate,because the statute in 18 U.S.C.§3559(c)(2)(F)(ii) is unconstitutionally vague,and should not stand or mandate my life sentence.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

(b) At the arraignment and plea:  Mark Wilson/Address unknown

(c) At the trial:  same

(d) At sentencing:  Jeffrey M.Lindy

(e) On appeal:  David L.McColgin

(f) In any post-conviction proceeding:  Paul Messing

(g) On appeal from any ruling against you in a post-conviction proceeding:  Same

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☐    No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:  N/A

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐    No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Because the Movant has timely filed within one year of the Supreme Court ruling in Davis pursuant to § 2255(H)and(f)(3).

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

    (1)   the date on which the judgment of conviction became final;

    (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

    (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: Vacate the § 924 (c) conviction
whereas second-degree murder is the underlying offense,and resentence
him accordingly.

or any other relief to which movant may be entitled.

Pro-Se     *Robert Martin*

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on   September 16 th /2019

(month, date, year)

Executed (signed) on   *Robert Martin*   (date) September 16 th/2019

*Robert Martin*

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

N/A

UNITED STATES OF AMERICA v. ROBERT EARL MARTIN
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2005 U.S. Dist. LEXIS 9302
CRIMINAL NO. 98-178
May 16, 2005, Decided
May 17, 2005, Filed

**Editorial Information: Subsequent History**

Affirmed by United States v. Martin, 262 Fed. Appx. 392, 2008 U.S. App. LEXIS 2089 (3d Cir. Pa., 2008)

**Editorial Information: Prior History**

United States v. Martin, 46 Fed. Appx. 119, 2002 U.S. App. LEXIS 15317 (3d Cir. Pa., 2002)

**Counsel**     For USA, Plaintiff: MARY E. CRAWLEY, U.S. ATTORNEY'S OFFICE, PHILADELPHIA, PA.

**Judges:** Norma L. Shapiro, S.J.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Petitioner inmate moved to vacate, set aside, or correct his life sentence under 28 U.S.C.S. § 2255. Counsel was not ineffective for failing to preclude or object to detective's identification testimony under Fed. R. Evid. 701 and eliciting her testimony on informant's identification because it could have been a strategic decision and there was a substantial amount of evidence the jury could have relied on apart from the detective's statements.

**OVERVIEW:** The inmate was convicted of bank robbery and was sentenced to life in prison. On the inmate's motion to vacate, set aside, or correct his sentence, the court held that he was not entitled to relief on his claim that his trial counsel was ineffective for failing to preclude or object to a detective's identification testimony under Fed. R. Evid. 701 and eliciting her testimony on an informant's identification because it could have been a strategic decision on the part of trial counsel and there was a substantial amount of evidence the jury could have relied on apart from the detective's statements. In addition to testimony from eyewitnesses, the jury viewed surveillance photographs of the inmate, and he was before the jury for their own examination. The inmate was not entitled to relief on his claim that his trial counsel should have requested a jury instruction to treat the identification evidence with caution because the Barber decision would not necessarily required a cautionary instruction. The eyewitnesses testimony was comparatively certain and relatively consistent. The jury examined the surveillance photographs and carefully compared them with the inmate in person.

**OUTCOME:** The inmate's motion was denied.

## LexisNexis Headnotes

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > General Overview*
*Criminal Law & Procedure > Postconviction Proceedings > Motions to Set Aside Sentence*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations >*

1yccases

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Accrual Period*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations >*
*Antiterrorism & Effective Death Penalty Act*
*Governments > Legislation > Statutes of Limitations > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*

The Antiterrorism and Effective Death Penalty Act imposes a one-year period of limitation on the filing of a 28 U.S.C.S. § 2255 motion. The period begins to run from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the United States Supreme Court, if that right has been newly recognized by the Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations >*
*General Overview*
*Criminal Law & Procedure > Postconviction Proceedings > Motions to Set Aside Sentence*
*Civil Procedure > Parties > Self-Representation > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Pleadings*

A pro se 28 U.S.C.S. § 2255 motion by an incarcerated prisoner is deemed filed on the date he delivers it to prison officials for mailing to the district court.

*Criminal Law & Procedure > Postconviction Proceedings > Motions to Set Aside Sentence*
*Criminal Law & Procedure > Appeals > Reviewability > Waiver > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Sentences*

Under 28 U.S.C.S. § 2255, a prisoner in federal custody may attack the validity of his sentence. Once his chance to appeal has been waived or exhausted, courts are entitled to presume he stands fairly and finally convicted. Section 2255 allows the court to examine jurisdictional errors, constitutional violations, proceedings that resulted in a complete miscarriage of justice, or events that were inconsistent with the rudimentary demands of fair procedure.

*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*

A claim for ineffective assistance of counsel is examined under the two-prong test of Strickland v. Washington. First, the defendant must show trial counsel's performance fell below an objective standard of reasonableness. Second, the defendant must affirmatively prove prejudice by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The court may consider that a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Also, the court may consider the cumulative effect of multiple counsel errors.

*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*
*Criminal Law & Procedure > Counsel > Effective Assistance > General Overview*

A court must review a defendant's claim of ineffective assistance of counsel with the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The defendant

1yccases                                          2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

39869006

bears the burden of showing counsel's representation was unsound. Counsel cannot be ineffective for failing to raise meritless claims, and counsel's strategic choices are reviewed with a strong presumption of correctness.

*Criminal Law & Procedure > Eyewitness Identification > General Overview*
*Evidence > Testimony > Lay Witnesses > General Overview*
*Evidence > Testimony > General Overview*
*Evidence > Testimony > Experts > Admissibility*

Under Fed. R. Evid. 701, assuming that the witness was not qualified as an expert on the issue, her testimony would only have been admissible if it was helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Some courts require that the witness had prior contact with the defendant.

*Evidence > Testimony > Lay Witnesses > General Overview*

See Fed. R. Evid. 701.

*Criminal Law & Procedure > Eyewitness Identification > General Overview*
*Criminal Law & Procedure > Jury Instructions > Particular Instructions > Use of Particular Evidence*
*Criminal Law & Procedure > Trials > Burdens of Proof > General Overview*
*Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution*
*Criminal Law & Procedure > Jury Instructions > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Proof Beyond Reasonable Doubt*

In any case raising the question whether the defendant was in fact the criminal actor, the jury will be instructed to resolve any conflict or uncertainty on the issue of identification. The jury will be instructed that identification may be made through the perception of any of the witnesses' senses, and that it is not essential that the witness himself be free from doubt as to the correctness of his opinion. The identification testimony may be treated by the jury as a statement of fact by the witness: (1) if the witness had the opportunity to observe the accused; (2) if the witness is positive in his identification; (3) if the witness' identification testimony is not weakened by prior failure to identify or by prior inconsistent identification; and (4) if, after cross-examination, his testimony remains positive and unqualified. In the absence of any one of these four conditions, however, the jury will be admonished by the court that the witness' testimony as to identity must be received with caution and scrutinized with care. The burden of proof on the prosecution extends to every element of the crime charged, including the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime for which he stands charged.

*Criminal Law & Procedure > Counsel > Effective Assistance > Trials*
*Criminal Law & Procedure > Defenses > Insanity > General Overview*
*Criminal Law & Procedure > Defenses > Insanity > Insanity Defense*

Defense counsel has a constitutional duty to conduct thorough investigations and call witnesses in support of a defense.

## Opinion

**Opinion by:**      Norma L. Shapiro

1yccases               3

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

39869066

Opinion

**MEMORANDUM AND ORDER**

**Norma L. Shapiro, S.J.**

**May 16, 2005**

Before the court is the motion of **Robert Earl Martin** ("Martin") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After a jury trial in 1998, Martin was convicted of armed bank robbery and using and carrying a firearm during a crime of violence. He was sentenced to life in prison under 18 U.S.C. § 3559(c), the "three strikes" statute. Martin filed a *pro se* motion under 28 U.S.C. § 2255 arguing he was denied his Sixth Amendment right to effective assistance of counsel; the government did not object to an evidentiary hearing. Martin was appointed counsel, and an evidentiary hearing was held March 2, 2005.

The facts of the crime are described at *United States v. Martin*, 2000 U.S. Dist. LEXIS 2054, 2000 WL 233217, *1-2 (E.D. Pa. 2000):

> On March 6, 1998, a man with a double-barreled sawed-off shotgun robbed United Bank, 2820 West Girard Avenue, Philadelphia, Pennsylvania, and took $ 6,694. On March 25, 1998, an informant told Philadelphia Police Detective Mary Seifert she believed the man in a surveillance photograph taken during the bank robbery was at a barber shop at 2125 Ridge Avenue, Philadelphia. Detective Seifert proceeded to the barber shop, recognized Martin as the person in the surveillance photograph, and arrested him. The main issue at trial was identification of defendant. The government called three eyewitnesses who identified Martin as the robber: Sandra Risco ("Risco"), the bank's head teller; Kimberly Smiley ("Smiley"), a security guard; and Margaret Green ("Green"), a customer service representative. According to Ms. Risco's testimony, she was working at the second teller window in the bank when she heard sounds of a struggle. She then saw Martin, holding a gun beneath Smiley's neck; Martin was looking through her window, "right at [her] face." Martin then entered the teller area and removed money from one of the drawers. Following the robbery, Ms. Risco described the robber as a man "a little taller than herself," between 130 and 140 pounds, wearing a baseball cap, a blue jacket, and with a "straggly looking face" in need of a shave. She also noticed that the robber moved with an unusual "side to side" walk. She estimated that it was five minutes between the time she saw Martin at the window until he ran out of the bank. On March 27, 1998, Ms. Risco spoke with an FBI agent and identified Martin as the robber from a photo spread of eight black males.
>
> Ms. Smiley, an employee of Scotland Yard Security Company, was working as a security guard in United Bank the day of the robbery. She testified to seeing Martin enter the bank at around 12:30 p.m. that day; she spoke with him briefly, and he left. Approximately fifteen to twenty minutes later, Ms. Smiley saw Martin re-enter the bank carrying a sawed-off shotgun; he pointed the shotgun at her and, after she attempted to push it away, hit her on the head with it. Ms. Smiley testified that Martin pulled her through the bank lobby to the customer service area door, demanded to be buzzed into that area, and, after gaining entry, proceeded through to the teller area while Ms. Smiley remained in the customer service area. Following the robbery, Ms. Smiley

1yccases                                    4

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

39869066

described the robber as five foot eight or five foot nine, "scruffy looking," wearing a light blue hooded jacket, dark jeans and a baseball hat. On March 26, 1998, Ms. Smiley identified Martin in an eight person photo spread. Ms. Smiley, in identifying Martin as the bank robber in court, stated she had looked directly at Martin's face during the robbery.

Ms. Green, the third eyewitness, was working as a bank customer service representative the day of the robbery. She was sitting at her desk in the customer service area when she saw the robber bring Ms. Smiley to the door and demand to be buzzed in. Ms. Green complied, watched the robber enter the teller area, and watched him again as he exited. After the robbery, Ms. Green described the robber as a black male, medium height, medium build, approximately 160 to 170 pounds, and wearing a jacket that zipped up the front. Ms. Green identified Martin as the robber at trial.

The government also called, among other witnesses, Federal Bureau of Investigation ("FBI") Special Agent Ronald Manning. Agent Manning testified he observed Martin walking with a "pigeon-toed" gait while in custody on March 25, 1998, a significant observation because one of the eyewitnesses had described the robber as walking in a "struggling manner" when leaving the bank. According to Agent Manning, no fingerprints matching Martin's were recovered from the crime scene, and neither the money nor the shotgun was ever found.

The defendant called one witness, Richard Vorder Bruegge ("Vorder Bruegge"), an examiner of photographic evidence from the FBI Laboratory Division Special Photographic and an expert in photographic examination. Vorder Bruegge compared an arrest photograph of the defendant with a surveillance photograph from the bank and concluded he could not tell whether the individuals were the same. He offered the opinion that there were many similarities between the two photographs, and testified that he came "very close to making a positive identification."

All of the photographic evidence was presented at trial. The jury viewed the bank video surveillance tape showing the robbery. Numerous surveillance photographs, several of which showed the robber, were also admitted in evidence, as were arrest photographs of Martin and the photo spread from which two of the eyewitnesses identified Martin as the robber. Among the facts the parties stipulated to are that Martin is five feet ten, 175 pounds, born on June 14, 1954, and the robber was in the bank for approximately one minute.

Martin emphasizes that the witnesses had a limited period in which to observe the robber. About eighty surveillance photographs were taken during the robbery, at a frequency of once every 0.75 seconds. The photos showed that none of the three witnesses had a direct, unobstructed view of the robber, although the witnesses testified otherwise.

Martin also points to inconsistencies in the witnesses' initial descriptions of the robber during the police interviews. Ms. Risco described the robber as 5'7" to 5'8" tall, and weighing between 130 and 140 pounds. Ms. Smiley described him as 5'8" to 5'9" tall, and weighing approximately 150 pounds. Martin is 5'10" tall, and weighs 175 pounds. Also, surveillance photos show the robber had a mustache and wore a baseball cap with a logo. Ms. Risco testified at trial that she never mentioned the mustache or logo in her initial statement to the police.

During its direct examination of Detective Seifert, the government elicited the following testimony concerning the circumstances of Martin's arrest:

Q: Now, directing your attention to approximately March 25th, 1998, were you on duty that day?

A: Yes, I was.

Q: By that time, had you seen this photograph once or more than once?

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A: More than once.

[. . .]

Q: And were you familiar with that photograph by then?

A: Yes, I was.

Q: On that day, did you arrest anybody?

A: Yes, I did.

Q: Who did you arrest?

A: I arrested the defendant, Mr. Martin.

Q: Where did you arrest him?

A: Inside the barber shop at 2125 Ridge Avenue in Philadelphia.

Q: And had you gone there hoping that he would be there?

A: Yes.

Q: Why were you looking for a person matching this photograph?

A: To arrest him for bank robbery.

Q: Did you go into the barber shop when you when there that day?

A: Yes, I did.

Q: And did you have -- were you by yourself or with other persons?

A: I was with other persons.

Q: When you went into the barber shop, was there more than one person inside, or only one person?

A: There was more than one.

Q: And you arrested this defendant?

A: Yes, I did.

Q: Again, what did you arrest him for, as opposed to somebody else in the barber shop?

A: I recognized him as being the person in this photograph, which is a surveillance photo taken the day of the robbery of the bank robber.

Q: Now, at the time that you arrested Mr. Martin, did you know his full name?

A: No, I did not.

Q: Did you have any name for him?

A: We had received the name of Rob, only Rob, R-O-B-.(Tr. 6/30/98, 161-63.) Trial counsel for Martin did not move in advance to preclude the government from introducing Detective Seifert's identification of Martin as the person in the surveillance photograph. Nor did counsel object during the testimony.

During cross-examination of Detective Seifert, defense counsel elicited the following testimony

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

concerning the informant who had told Detective Seifert that the man in the surveillance photo worked in the barber shop:

Q: Okay. And you had received information that day, as you indicated by indicating you had the name Rob from a woman named Edna Cook, is that correct?

A: That is correct, sir.

Q: Okay. And Edna Cook had seen that photograph that you have or a copy of that photograph that you have, and had indicated to you that she thought that that was Rob, is that fair to say?

A: That's correct.

Q: And so armed with that information, you went to a location where Edna Cook said that this person Rob was, my client, and went in there and you found him inside, and today you're indicating that you think that the individual pictured in that photograph is my client, Rob Martin, is that fair to say?

A: It is him.

Q: Well, it is him? How do you -- did you -- do you have fingerprints --

A: Well it looks like him.

Q: -- from the bank?

A: It looks like him.

Q: It looks like him. Thank you.(Tr. 6/30/98, 164-65.) On re-direct, the government re-elicited Detective Seifert's testimony on this topic, but the defense objected to the identification:

Q: You were asked some questions about how you knew this was the person in the photograph. Aside from your own belief, was there any other information you were relying on?

A: An indication from the informant and --

Q: Ms. Cook?

A: Ms. Cook, and he looked like the man in the picture.

Q: How -- in your own opinion, how closely does he resemble that picture?

A: It looks exactly like --

MR. WILSON: Objection, your Honor. That's for the province of the jury in this case.

THE COURT: Sustained. Also, it's not appropriate redirect. (Tr. 6/30/98, 165-66.)

Trial counsel had available two witnesses whose testimony, according to Martin, would have strengthened Martin's defense by providing an alibi. Tyrone Polk and Mark El were co-workers of Martin at the barber shop. According to the defense investigator, Mr. Polk would have testified that he was in and out of the barber shop on the date of the robbery, but that Martin was there every time Mr. Polk returned. Mr. El would have testified that he too was in and out of the barber shop, and although he could not recall whether Martin was there every time Mr. Polk returned, Martin was at work that day. They also would have testified that Martin is ill with heart problems, and that he loses his breath easily. Although both witnesses were in the courtroom and prepared to testify, trial counsel chose not to call them.

The jury convicted Martin, and he was sentenced to imprisonment for life under 18 U.S.C. § 3559(c),

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the "three strikes" statute. Counsel was appointed to represent Martin in post-trial proceedings. Martin moved for Judgment of Acquittal under Federal Rule of Criminal Procedure 29. *See United States v. Martin*, 2000 U.S. Dist. LEXIS 2054, 2000 WL 233217, *1 (E.D. Pa. 2000). Martin argued the evidence was insufficient to identify him as the robber, and that he was prejudiced by prosecutorial misconduct in the prosecutor's closing argument. The motion was denied.

Martin then challenged the application of the "three strikes" provision, under which he was sentenced to life on the basis of two prior convictions. *See United States v. Martin*, 2001 U.S. Dist. LEXIS 5928, 2001 WL 493199, *1 (E.D. Pa. 2000). Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), Martin argued that because his prior convictions were not charged in the indictment nor found by the jury, the court could not use them to determine his sentence. The motion was denied. Martin appealed his conviction and sentence to the Court of Appeals, who affirmed both. *See United States v. Martin*, 46 Fed.Appx. 119 (3d Cir. 2002).

## II. JURISDICTION, TIMELINESS, AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. §§ 2255 and 2241. AEDPA imposes a one-year period of limitation on the filing of a Section 2255 motion. 28 U.S.C. § 2255. The period begins to run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. *Id.*

After the Court of Appeals affirmed Martin's conviction and sentence, *Martin*, 46 Fed.Appx. at 119, Martin petitioned the Supreme Court of the United States for a writ of certiorari. Martin's conviction became final when the Court denied the petition on March 10, 2003, *Martin v. United States*, 538 U.S. 915, 155 L. Ed. 2d 241, 123 S. Ct. 1502 (2003). *See United States v. Vega*, 285 F.3d 256 (3d Cir. 2002). Martin's motion was timely filed less than one year later. 1

Under Section 2255, a prisoner in federal custody may attack the validity of his sentence. Once his chance to appeal has been waived or exhausted, courts are entitled to presume he stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164, 71 L. Ed. 2d 816, 102 S. Ct. 1584 (1982). Section 2255 allows the court to examine jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice," or events that were "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 784, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979).

A claim for ineffective assistance of counsel is examined under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). First, the defendant must show trial counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. Second, the defendant must affirmatively prove prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The court may consider that "a verdict or conclusion only weakly supported by the record is more

1yccases                                    8

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. Also, the court may consider the cumulative effect of multiple counsel errors. *See McNeil v. Cuyler*, 782 F.2d 443, 451 (3d Cir. 1986).

The court must review Martin's claim with the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Martin bears the burden of showing counsel's representation was unsound. *Id.* at 690. Counsel cannot be ineffective for failing to raise meritless claims, and counsel's strategic choices are reviewed with a strong presumption of correctness. *See id.*; *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir.1996).

## III. DISCUSSION

Martin argues trial counsel committed three errors that violate an objective standard of reasonableness, and these errors individually and cumulatively resulted in prejudice sufficient to undermine confidence in the outcome of his trial.

### A. Seifert's identification testimony

Martin argues trial counsel was ineffective for failing to preclude or object to Detective Seifert's identification testimony, and eliciting her testimony on the informant's identification.

Martin contends Detective Seifert's identification testimony was inadmissible as lay opinion because she was not an eyewitness to the robbery. Under Federal Rule of Evidence 701 2, assuming Detective Seifert was not qualified as an expert on this issue, her testimony would only have been admissible if it was "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701. Some courts require that the witness had prior contact with the defendant. *See United States v. Henderson*, 68 F.3d 323, 326 (9th Cir. 1995); *United States v. Jackman*, 48 F.3d 1, 4 (1st Cir. 1995); *United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990); *United States v. Allen*, 787 F.2d 933, 935-37 (4th Cir. 1986), judgment vacated on other grounds, 479 U.S. 1077 (1987); *United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984); *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir. 1980); *United States v. Calhoun*, 544 F.2d 291, 295-97 (6th Cir. 1976); *United States v. Robinson*, 544 F.2d 110, 113 n.4 (2d Cir. 1976). There is no Third Circuit case on point.

Martin argues Detective Seifert's testimony was particularly damaging because of her status as a law enforcement officer, and a witness who was not subject to the stress and excitement of the robbery itself. In closing arguments, the government referred to Detective Seifert's identification testimony and her status as a law enforcement officer. Martin contends trial counsel should have moved *in limine* to preclude Detective Seifert's testimony or objected to it at trial.

Martin also contends his trial counsel compounded the error by eliciting hearsay testimony concerning the identification by the informant, Ms. Cook. Martin argues evidence of this identification was especially harmful because Ms. Cook knew Martin.

Martin argues that without Detective Seifert's identification testimony and the hearsay statement from Ms. Cook, there is a reasonable probability that the outcome would have been different. Martin emphasizes that the photographic and eye-witness evidence was less than overwhelming, and that the additional testimony pushed the jury past the "tipping point" to a guilty verdict.

The government argues trial counsel's failure to preclude or object to the identification testimony was the result of a strategic decision within the bounds of reasonable professional judgment. The government describes trial counsel's strategy as an attempt to attack the surveillance photographs. Trial counsel introduced the evidence of Ms. Cook's identification in an attempt to show that Detective Seifert could not have identified the subject without the help of someone else.

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

39869066

The government contends the jury was entitled to know the circumstances of Martin's arrest, and Detective Seifert's testimony was appropriate "background" information necessary to put the event in context. The statement from Ms. Cook was not hearsay, because it was not submitted for the truth of the matter asserted; rather, it was offered to show the effect on the listener (Detective Seifert's seeking the subject of the photograph at the barber shop).

The government also argues that there is no iron-clad rule against identification testimony from an arresting officer. *See United States v. Jackson*, 688 F.2d 1121 (7th Cir. 1982) (permitting a non-eyewitness to testify that defendant was pictured in a surveillance photograph). The government argues that the impact of this additional testimony was insufficient to change the outcome, because the jury relied heavily on the surveillance photographs and the eyewitness testimony.

Martin points to no precedent that this conduct violated an objectively reasonable professional standard. It could have been a strategic decision on the part of trial counsel, and Martin does not present sufficient evidence to meet his burden of proving otherwise. There was a substantial amount of evidence the jury could have relied on apart from Detective Seifert's statements. In addition to testimony from the eyewitnesses, the jury viewed surveillance photographs of Martin, and he was before the jury for their own examination. There is not a reasonable probability that the jury would have found Martin not guilty had Detective Seifert's testimony been excluded or not elicited. This claim will be denied.

## B. Counsel's failure to request a cautionary identification charge

Martin argues trial counsel should have requested a jury instruction to treat the identification evidence with caution. *See United States v. Barber*, 442 F.2d 517 (3d Cir. 1971). In *Barber*, the court required that jury instructions regarding identification must satisfy the following:

> In any case raising the question whether the defendant was in fact the criminal actor, the jury will be instructed to resolve any conflict or uncertainty on the issue of identification. The jury will be instructed that identification may be made through the perception of any of the witness' senses, and that it is not essential that the witness himself be free from doubt as to the correctness of his opinion. The identification testimony may be treated by the jury as a statement of fact by the witness: (1) if the witness had the opportunity to observe the accused; (2) if the witness is positive in his identification; (3) if the witness' identification testimony is not weakened by prior failure to identify or by prior inconsistent identification; and (4) if, after cross-examination, his testimony remains positive and unqualified. In the absence of any one of these four conditions, however, the jury will be admonished by the court that the witness' testimony as to identity must be received with caution and scrutinized with care. The burden of proof on the prosecution extends to every element of the crime charged, including the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime for which he stands charged. *Id.* at 528 (citing *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820, 826-27 (Pa. 1954)). Martin argues the four conditions laid out above were not all satisfied in this instance, so the jury should have been instructed "that the witness' testimony as to identity must be received with caution and scrutinized with care." *Barber*, 442 F.2d at 528.

Regarding the first condition, there were questions about some of the witnesses' opportunity to observe the robber because of the short time period and their obstructed views. There were prior failures to mention salient physical features of the robber and inconsistencies in their descriptions to the police. Martin argues trial counsel's failure to request this instruction was therefore objectively unreasonable. *See, e.g., Freeman v. Class*, 95 F.3d 639, 642 (8th Cir. 1996)(no reasonable trial strategy for failure to request a charge cautioning the jury on the credibility of an accomplice's

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

30869066

testimony); *United States v. Span*, 75 F.3d 1383, 1389-90 (9th Cir. 1996) (ineffective assistance of counsel for failure to request charge on self-defense). Pennsylvania state courts have found ineffective assistance of counsel for failure to request jury instructions regarding identification as well. *See Commonwealth v. McKnight*, 307 Pa. Super. 213, 453 A.2d 1, 2 (Pa. Super. Ct. 1982).

Martin contends there was no strategic reason not to request the instruction, so trial counsel's failure to do so was objectively unreasonable. Because the identification issue was central to the case, and the evidence was not overwhelming, the absence of this instruction prejudiced the defense.

The government argues this claim is not cognizable on a § 2255 petition because the standard of review for a failure to give a jury instruction is for abuse of discretion. *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995). The government contends that since Martin failed to request the instruction at trial or object to the failure to give it, he must also show plain error. *United States v. Antico*, 275 F.3d 245, 265 (3d Cir. 2001).

Second, the government emphasizes that the court gave the jury a comprehensive instruction on identification testimony, proffered by Martin's trial counsel. Jury instructions must be considered in their totality. The instructions given by the court emphasized the importance of the identification testimony, and informed jurors of the various factors they could consider in evaluating the identification testimony. Also, the government's case was based more heavily on the surveillance photographs than the eyewitness testimony.

Third, the government contends the conditions required by *Barber* for the cautionary instruction were not present in this case. The *Barber* instruction is only necessary when the witness's testimony is "too inconclusive, contrary, and uncertain to be the basis of a legal conclusion." *United States v. Bamberger*, 456 F.2d 1119, 1125 (3d Cir. 1972). In *Barber*, fifteen persons approached two FBI agents, and three to four of them assaulted each agent. The eyewitnesses in *Barber* were confused, and their identifications where shifting and uncertain. In this case, there was only one robber, and the government argues the eyewitnesses' identifications were certain and unwavering, and identified Martin unequivocally.

The government misstates the standard of review for this claim. The claim is ineffective assistance of counsel, not a direct challenge to the jury instruction. The cases the government cites were challenges to jury instructions (or the lack thereof) on direct appeal, not ineffective counsel claims on habeas.

We agree with Martin that there is no strategic justification for counsel's failure to request the instruction, but we also agree with the government that *Barber* would not necessarily require a cautionary instruction in this case. Compared with the witnesses in *Barber*, the eyewitness testimony here was comparatively certain and relatively consistent. Additionally, because the jury examined the surveillance photographs and carefully compared them with Martin in person, Martin has not shown there would be a reasonable probability of a different outcome had the jury received the *Barber* instruction. This claim will be denied.

## C. Trial counsel's failure to call available alibi witnesses

Martin argues that had trial counsel called Mr. Polk and Mr. El, they would have testified that Martin was at the barber shop on the day of the robbery, although neither of them was there all day. They also could have testified that Martin suffered from heart disease and easily lost his breath.

Defense counsel has a constitutional duty to conduct thorough investigations and call witnesses in support of a defense. *See, e.g., United States v. Kauffman*, 109 F.3d 186, 190-91 (3d Cir. 1997) (finding ineffective assistance of counsel for failure to investigate insanity defense when counsel had

1yccases

11

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

39869066

a psychiatric report supporting it). Trial counsel did investigate the witnesses, but Martin contends there was no reasonable basis for the failure to call them at trial. Martin concedes that his alibi was not airtight, but points out that it is rare for an alibi to be airtight, and an airtight alibi may not have the ring of truth. Also, Martin argues the witnesses, by testifying that Martin had been working, would have removed the purported motive for robbery.

Trial counsel conducted the required degree of investigation. Trial counsel had the witnesses available in court and ready to testify, yet chose not to call them; that suggests the decision was strategic. It was not an objectively unreasonable decision, since neither witness could provide Martin with an airtight alibi. Neither witness could testify Martin was at the barber shop at or near the time of the robbery. In an interview with FBI agents, Mr. Polk admitted Martin did not keep regular hours. Also, Mr. Polk had been convicted of multiple felonies, all of which would have been admissible for impeachment. The FBI interview of Mr. El showed he was unable to testify as to the exact whereabouts of Martin. Mr. El said Martin routinely left work in the afternoon, around the time the bank was robbed.

Martin has not met his burden of showing trial counsel made an objectively unreasonable strategic decision not to call the alibi witnesses. This claim will be denied.

Finally, even considering the potential cumulative prejudice of any arguably unreasonable mistakes by trial counsel, there was abundant evidence on which the jury could have and would have relied. Most importantly, the jury's ability to compare surveillance photographs of the robber with Martin himself, in corroboration with the testimony of three eye witnesses, provided ample evidence of Martin's guilt. There was no reasonable probability of a different outcome had trial counsel acted differently.

## IV. CONCLUSION

For the reasons above, Martin's motion will be denied. An appropriate order follows.

### ORDER

AND NOW this 16th day of May, 2005, upon consideration of Robert Earl Martin's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. No. 92) and the government's response (Doc. No. 104), it is **ORDERED** that:

1. The motion is **DENIED**.

2. Because there is no probable cause to issue a certificate of appealability, no certificate of appealability shall issue.

/s/ Norma L. Shapiro, S.J.

### Footnotes

1

Although the clerk stamped Martin's *pro se* motion "filed" on March 11, 2004, a *pro se* Section 2255 motion by an incarcerated prisoner is deemed filed on the date he delivers it to prison officials for mailing to the district court. *Burns v. Morton* 134 F.3d 109, 113 (3d Cir. 1998). The envelope containing Martin's motion was postmarked March 9, 2004, showing that he presented it to prison officials prior to the expiration of the one-year deadline.

2

1yccases

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Rule 701 provides:

**Opinion Testimony by Lay Witnesses**

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

39869066