**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO.  98-178** |
| | : | |
| **ROBERT EARL MARTIN** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                     **September 14, 2021**

The Bureau of Prisons is holding Robert Earl Martin at FCI Butner Medium II following Judge Shapiro's mandated life sentence for armed bank robbery under the three strikes law following convictions for three serious violent felonies over twenty-five years. Mr. Martin appealed his life sentence without success. He filed three unsuccessful habeas petitions. We denied Mr. Martin's first motion for compassionate release in July 2020 following four months of COVID-19 mitigation in federal prisons before widespread vaccinations. Mr. Martin again moves for compassionate release. He now cites the risk of a spread of COVID-19 Delta variant over the last two months.  He also repeats his arguments the sentence is invalid under the First Step Act. The Bureau of Prisons confirmed Mr. Martin's COVID-19 vaccination several months ago. He has not faced COVID-19 illness. The Delta variant has not spread at FCI Butner as of today. He fails to show extraordinary and compelling reasons for his release based on medical concerns. He remains a risk to society if released. His arguments regarding amendments to sentencing under the First Step Act are wrongly repeated in his motion for compassionate release after being repeatedly denied when raised in duplicative habeas petitions. As we told him before, his First Step Act arguments do not apply as his sentence is based on the three strikes law and not amendments to the Armed Career Criminal Act. We again deny his motion for compassionate release.

I.      **Factual background**

Judges entered judgments convicting Mr. Martin of crimes from three separate incidents occurring in 1973, 1988, and 1998. A Philadelphia jury found Mr. Martin guilty of second-degree murder after he fired a shotgun at a Philadelphia bar in 1973, injuring a woman who later died.[1] The state court sentenced Mr. Martin to a seven-to-fourteen-year prison sentence for second-degree murder.[2] Mr. Martin plead guilty to charges of armed bank robbery and possession of a firearm in relation to a crime of violence in North Carolina in 1988.[3] The court sentenced Mr. Martin to a thirty-six-month sentence for armed robbery and a consecutive sixty-month sentence for using a firearm.[4] A jury in our District found Mr. Martin guilty of armed bank robbery and using and carrying a firearm during and in relation to the armed bank robbery in 1998 under the Armed Career Criminal Act.[5] Judge Shapiro sentenced Mr. Martin to mandatory life imprisonment in August 2001 required by Congress under 18 U.S.C. § 3559(c) (the "three strikes" law), because of Mr. Martin's convictions for three serious violent felonies.[6]

Our Court of Appeals denied Mr. Martin's appeal of his three-strikes sentence in 2002.[7] Mr. Martin then sought habeas relief, arguing his life sentence is invalid.[8] Judge Shapiro denied his petition for habeas. We agreed with Judge Shapiro's 2005 denial of habeas relief and denied Mr. Martin's habeas petitions in 2018 and in February 2020.[9]

### *We denied Mr. Martin's first motion for compassionate release.*

Mr. Martin moved for compassionate release on June 4, 2020, arguing his health conditions constituted extraordinary and compelling circumstances with the risk of COVID-19 warranted release.[10] The United States agreed Mr. Martin's health then constituted extraordinary and compelling circumstances, but argued Mr. Martin had not shown entitlement to release after balancing the factors Congress detailed in 18 U.S.C. § 3553.[11] We agreed with the United States

in July 2020, finding Mr. Martin still posed a threat to others based on his violent criminal history, and denied Mr. Martin's motion.[12] We denied his motion for reconsideration in August 2020.[13]

### *Delta complicates the COVID-19 pandemic.*

Mr. Martin now returns seeking compassionate release but now citing the risk of the Delta variant of COVID-19. The COVID-19 pandemic is in its nineteenth month in our area.[14] Most people infected with COVID-19 experience mild respiratory symptoms, but hundreds of thousands "become seriously ill or die."[15] The Centers for Disease Control and Prevention (CDC) advises COVID-19 spreads in three main ways: (1) breathing in air near an infected person, (2) contacting infected air droplets, and (3) touching one's eyes, nose, or mouth with hands containing virus particles.[16] We can reduce the spread of COVID-19 by wearing masks and social distancing.[17]

Prison staff and inmates "are at greater risk for the spread of germs" because of the difficulty social distancing in congested prisons.[18] The Bureau of Prisons modified operations to protect inmates and staff from COVID-19.[19] FCI Butner Medium II, where Mr. Martin resides, mandates social distancing in all areas and daily COVID-19 symptom screening for staff.[20] FCI Butner Medium II reports only one inmate of 1,450 has an active COVID-19 infection as of September 14, 2021.[21] It also reports one staff member with COVID-19.[22] Approximately 2,674 inmates have received vaccines out of approximately 2,895 inmates at Mr. Martin's prison complex.[23] Mr. Martin has been vaccinated.[24]

Some individuals face higher risk of death or severe illness should they contract COVID-19. Adults aged fifty or older face higher risk; the risk relatively increases for those aged sixty or older, seventy or older, and eighty or older.[25] Adults face higher risk of severe illness or death from COVID-19—regardless of age—if they have one or more of the following conditions: cancer; chronic kidney disease; chronic lung disease, including chronic obstructive pulmonary disease

(COPD), asthma (moderate-to-severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension; dementia or other neurological conditions; diabetes (type 1 or type 2); down syndrome; heart conditions (such as heart failure, coronary artery disease, cardiomyopathies or hypertension); human immunodeficiency virus; immunocompromised state; liver disease; obesity; pregnancy; sickle cell disease or thalassemia; smoking; having received a solid organ or blood stem cell transplant; stroke or cerebrovascular disease; and substance use disorders.[26] The United States does not dispute Mr. Martin, 67, suffers from several conditions: cardiomyopathy, pulmonary hypertension, dyslipidemia, hypertension, COPD, history of dysrhythmia, asthma, and obesity.[27]

One is "fully vaccinated" from COVID-19 two weeks following their second dose in a two-dose vaccine series, like the Pfizer or Moderna vaccines.[28] Vaccines effectively prevent sickness from COVID-19.[29] But people with a condition "may not be fully protected even if they are fully vaccinated."[30] Mr. Martin received the two-shot Pfizer vaccine on February 19, 2021 and March 10, 2021.[31]

The CDC released updated guidance regarding the "Delta" variant of COVID-19 in July 2021.[32] Delta "causes more infections and spreads faster than earlier forms of the virus that causes COVID-19."[33] Some data suggest Delta "might cause more severe illness than previous variants in unvaccinated people."[34] But Delta infects "only a small proportion" of vaccinated people.[35] The risk of such "breakthrough infections" is low, as "vaccines protect people against severe illness, including disease caused by Delta."[36]

### Mr. Martin again seeks compassionate release focusing on the risk from the Delta variant.

Mr. Martin again *pro se* moved for compassionate release on July 6, 2021.[37] He again argues his health conditions cause risk of severe illness or death should he contract COVID-19.[38]

The United States, which previously did not contest Mr. Martin's risk of complications, now argues Mr. Martin's health concerns are not extraordinary and compelling because he is vaccinated.[39] Mr. Martin replies the "highly contagious" Delta variant may infect him, causing severe consequences.[40]

## II.    Analysis

Congress allows us to grant compassionate release if Mr. Martin: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;"[41] (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[42] Our Court of Appeals instructs policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[43] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable.[44] Mr. Martin "bears the burden of proving that extraordinary and compelling reasons exist."[45]

Mr. Martin argues his health conditions constitute "extraordinary and compelling reasons" warranting release because his conditions "greatly increase the risk that . . . his COVID-19 infection would be severe or even deadly."[46] He argues low risk of recidivism because he has matured in prison.[47] He raises several arguments his mandatory life sentence is invalid under changes to sentencing law.[48] The United States counters Mr. Martin's health risks are not extraordinary because he has vaccinated against COVID-19, Mr. Martin failed to present evidence of low recidivism, and his challenges to his sentence are improperly raised and meritless.[49]

We find Mr. Martin fails to show extraordinary and compelling reasons warranting release

based on the risk from the Delta variant because the Bureau of Prisons ensured his vaccination, lowering his risk of severe illness, and FCI Butner Medium II has only two active COVID-19 cases. Mr. Martin fails to show the section 3553 factors counsel early release as he presents nothing persuading us to modify our previous opinion regarding his danger to society. We finally conclude Mr. Martin's challenges to his sentence based on statutory amendments are improperly raised and meritless.

### A.    Mr. Martin fails to show extraordinary and compelling reasons for release.

Mr. Martin first argues we should modify his sentence because his health conditions constitute "extraordinary and compelling reasons" warranting his release.[50] The United States counters Mr. Martin's health has improved since he last moved for compassionate release because he has vaccinated against COVID-19.[51] Mr. Martin admits his vaccination but argues it does not "automatically" extinguish extraordinary and compelling reasons, especially because of Delta.[52] We agree with the United States.

"[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."[53] To prove extraordinary and compelling reasons for release based on COVID-19, Mr. Martin "must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held."[54] We possess discretion to define "extraordinary and compelling reasons."[55]

Judges divide on Delta's impact on federal prisoners' motions for compassionate release. Several have found Delta constitutes or contributes to an extraordinary and compelling reason for

release to vaccinated individuals.[56] They reason Delta poses a non-negligible risk to "vulnerable individuals"[57] and uncertainty surrounds breakthrough infections.[58] Judge Whitney noted vaccines are effective against Delta, but still found the defendant's combination of medical conditions, the threat of the pandemic, and poor conditions of confinement constituted extraordinary and compelling reasons.[59] But some judges finding Delta constitutes or contributes to extraordinary and compelling reasons for release still denied compassionate release motions because the section 3553 factors disfavored release.[60]

Many more judges find Delta does not pose an extraordinary and compelling risk to vaccinated individuals.[61] These judges largely rely on two factors: (1) CDC data showing vaccines prevent complications from Delta and the risk of breakthrough infections is low,[62] and (2) prisons having contained COVID-19 within their walls.[63] These judges so find even where defendants have serious medical conditions increasing their risk from COVID-19, including some conditions presented by Mr. Martin.[64] For example, Judge Bartle recently found a vaccinated prisoner with hypertension failed to show extraordinary and compelling circumstances for release based on COVID-19.[65] Judge Bartle noted Delta poses "special dangers" for prisoners, but cited CDC data "breakthrough infections remain rare" for vaccinated people.[66] He concluded defendant's prison had instituted appropriate protocols to handle COVID-19, so defendant's increased susceptibility to COVID-19 did not warrant release.[67]

We agree with our colleagues finding the risk of infection from the Delta variant does not create extraordinary and compelling reasons as to Mr. Martin for compassionate release. Mr. Martin is vaccinated. The science confirms vaccinated persons face relatively limited breakthrough risks of serious illness or death. As our Court of Appeals instructed within weeks of the COVID-19 pandemic in our area, risk of illness is not extraordinary and compelling.[68] We today face a

different situation than in July 2020 when Mr. Martin could not get vaccinated and his health conditions placed him in a particular high risk. The vaccinated Mr. Martin fears infection but we have no evidence of risk to him at FCI Butner Medium II greater than he as a vaccinated person may face out of prison. As many judges reasoned, Mr. Martin's vaccination weakens the threat of severe complications from COVID-19, the vaccine is highly effective against COVID-19, and Delta infects few vaccinated people. The risk of "breakthrough infections" is low. Mr. Martin does not show why the vaccine will fail to prevent severe complications given his health conditions. We recognize "district judges are not epidemiologists,"[69] but we join the significant majority of judges reviewing the Delta variant arguments who choose to follow CDC guidance to allow consistency in prisoner treatment. As Judge Murphy reasoned, "[n]othing about the Delta variant changes the fact that [Mr. Martin's] vaccination status renders his fear of COVID-19 a non-compelling reason to grant him release."[70]

We are also persuaded by the fact FCI Butner Medium II is containing the virus. The Bureau of Prisons reports only two active COVID-19 cases there. The Butner complex also reports an inmate vaccination rate of about ninety-two percent. FCI Butner Medium II requires social distancing and data we reviewed confirm it is managing the COVID-19 situation. We recognize "it is well-established that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison,"[71] but Mr. Martin's facility appears relatively inoculated.[72] We find Mr. Martin fails to show extraordinary and compelling reasons for his release.

**B.    Congress's section 3553 factors disfavor release.**

Mr. Martin next argues the section 3553 factors counsel release because he is now a "reflective, empathetic[,] matured[,] responsible adult."[73] The United States argues Mr. Martin

fails to show the factors counsel reduction because Mr. Martin has done nothing to challenge our first opinion regarding his compassionate release motion. We agree with the United States.

Congress allows us to reduce a prisoner's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[74] We should at least consider the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."[75]

Mr. Martin fails to show the section 3553 factors counsel release. He states he matured in prison, but largely raises the same arguments we rejected in our July 2020 Memorandum denying his counselled Motion.[76] Mr. Martin's history of violent, serious felonies showing disregard for others' safety; his failure to reform following his first two incarcerations; his inability to be deterred from criminal conduct; and his extensive history of narcotic abuse counsel against reducing Mr. Martin's sentence after consideration of the section 3553 factors.[77] As we previously found, Mr. Martin deserves commendation for his clean disciplinary history, educational experiences while incarcerated, and remorse for his violent crimes.[78] But he fails to persuade us he is no longer a danger to society. We must deny his motion.

**C.     Mr. Martin fails to show we must reduce his sentence based on changes to law.**

Mr. Martin raises several unclear arguments regarding the First Step Act's changes to sentencing law.[79] First, he argues Congress's elimination of "stacking" penalties under the Armed Career Criminal Act warrants a reduction.[80] Second, he argues second-degree murder no longer categorically constitutes a "crime of violence" under the Act.[81] Third, he argues second-degree

murder is not a serious violent felony under the "three-strikes" law, so we must invalidate his mandatory life sentence.[82] We disagree with Mr. Martin's arguments.[83] We find he improperly raises them at this stage.

Mr. Martin's arguments are not properly raised in a motion for compassionate release. We may only grant compassionate release if the defendant shows extraordinary and compelling reasons for release; the defendant "is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)"; or if the defendant received a life sentence "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)."[84] Our Court of Appeals rejects challenges to sentences of "career offender[s]" raised under the compassionate release statute.[85] Such challenges are properly in petitions seeking habeas relief.[86]

Assuming Mr. Martin properly raised his arguments, we would still deny them. Amendments to the "stacking" provision do not assist Mr. Martin. The Act's "stacking" provision formerly required us to sentence defendants to mandatory twenty-five-year terms for "second and subsequent" violations of the Act, which could—and often did—occur in the same criminal occurrence.[87] Congress amended the Act's stacking provision, triggering "stacking" only once prior convictions under the Act "had become final."[88] But the "stacking" amendments do not assist Mr. Martin because Judge Shapiro did not sentence Mr. Martin under the Act—she sentenced him under the "three-strikes" law.[89] Mr. Martin's argument second-degree murder is no longer a "crime

of violence" under the Act fails for the same reason: Mr. Martin did not receive a life sentence under the Act.

We also reject Mr. Martin's argument second-degree murder is no longer a "strike" under the "three strikes" law. The "three strikes" law mandates a life sentence if the defendant is convicted of a "serious violent felony" after having been convicted of "2 or more serious violent felonies."[90] A "serious violent felony" is "an offense described in section 3559(c)(2) . . . for which the offender served a term of imprisonment of more than 12 months" and "any offense that would be a felony violation of section 113 . . ., if the offense were committed in the special maritime and territorial jurisdiction of the United States, for which the offender served a term of imprisonment of more than 12 months."[91] Mr. Martin received a mandatory life sentence under section 3559(c)(1) because he committed three separate "serious violent felonies": second-degree murder under Pennsylvania law,[92] and two counts of armed bank robbery—for separate offenses—under 18 U.S.C. § 2113(d).[93] Mr. Martin had served terms of more than twelve months for his second-degree murder conviction and his first count of armed bank robbery when he received his third conviction.[94] Mr. Martin committed three serious violent felonies. His mandatory life sentence is valid.[95]

## III.   Conclusion

Mr. Martin again moves for compassionate release. We deny his Motion. He fails to show extraordinary and compelling health-based reasons for his release as he is vaccinated and we find Delta is not an extraordinary and compelling health threat to him in FCI Butner today. Mr. Martin's arguments regarding the First Step Act are improperly raised and meritless.

---

[1] Pre-Sentence Investigation Report (PSR) ¶ 33; *see also* ECF Doc. No. 172 at 2.

[2] PSR ¶ 33.

---

[3] *Id.* ¶ 34; ECF Doc. No. 172 at 3.

[4] PSR ¶ 34.

[5] ECF Doc. No. 119-3 at 1.

[6] *Id.*; *see also United States v. Martin*, 46 F. App'x 119, 120 (3d Cir. 2002).

[7] *Martin*, 46 F. App'x at 120.

[8] ECF Doc. No. 137 at 3–5.

[9] ECF Doc. Nos. 106, 128, 137 (detailing Mr. Martin's habeas petitions on many of the same grounds raised today).

[10] ECF Doc. Nos. 148, 161.

[11] ECF Doc. No. 167 at 12.

[12] ECF Doc. No. 172.

[13] ECF Doc. No. 177.

[14] *See CDC Museum COVID-19 Timeline*, Centers for Disease Control and Prevention (last visited Sept. 13, 2021), available at https://www.cdc.gov/museum/timeline/covid19.html (noting the COVID-19 pandemic began in March 2020).

[15] *See Coronavirus*, World Health Organization (last visited Sept. 13, 2021), available at https://www.who.int/health-topics/coronavirus#tab=tab_1.

[16] *See How COVID-19 Spreads*, Centers for Disease Control and Prevention (last updated July 14, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.

[17] *See How to Protect Yourself & Others*, Centers for Disease Control and Prevention (last updated Aug. 13, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

[18] *See FAQs for Administrators, Staff, Incarcerated People & Family Members: What Steps Should I Take to Prepare My Facility?*, Centers for Disease Control and Prevention (last updated Jan. 26, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html.

[19] *See BOP COVID-19 Operational Levels*, Federal Bureau of Prisons (last visited Sept. 13, 2021), available at https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

---

[20] *See id.*

[21] *See COVID-19 Coronavirus*, Federal Bureau of Prisons (last visited Sept. 14, 2021), available at https://www.bop.gov/coronavirus/#.

[22] *Id.*

[23] *Id.* The Bureau of Prisons does not provide vaccination statistics for Mr. Martin's individual prison building, only the entire complex containing it. It provides 897 staff have received vaccinations.

[24] ECF Doc. No. 183 at 1–2.

[25] *See COVID-19 Risks and Vaccine Information for Older Adults*, Centers for Disease Control and Prevention (last updated Aug. 20, 2021), available at https://www.cdc.gov/aging/covid19/covid19-older-adults.html.

[26] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention (last updated Aug. 20, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[27] ECF Doc. No. 179 at 11.

[28] *See When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention (last updated Sept. 1, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.

[29] *See Effectiveness*, Centers for Disease Control and Prevention (last updated May 10, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html.

[30] *See When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention (last updated Sept. 1, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.

[31] *See* ECF Doc. No. 183 at 3.

[32] *See Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention (last updated Sept. 1, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.

[33] *Id.*

[34] *Delta Variant: What We Know about the Science*, Centers for Disease Control and Prevention (last updated Aug. 26, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html.

[35] *See Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention (last updated Sept. 1, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.

[36] *See The Possibility of COVID-19 after Vaccination: Breakthrough Infections*, Centers for Disease Control and Prevention (last updated Aug. 23, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

[37] ECF Doc. No. 179.

[38] *Id.* at 13.

[39] ECF Doc. No. 183 at 3–11.

[40] ECF Doc. No. 187 at 5–6.

[41] The parties do not dispute Mr. Martin has exhausted his remedies. ECF Doc. No. 179 at 33–35.

[42] 18 U.S.C. § 3582(c)(1)(A)(i).

[43] *United States v. Andrews*, No. 20-2768, --- F.4th ---, 2021 WL 3852617, at *4 (3d Cir. Aug. 30, 2021). In denying Mr. Martin's first motion for compassionate release in Summer 2020, we found Mr. Martin needed to show he was no longer a "danger to others and the community" based on the Commission's policy statement 1B1.13(2). *See* ECF Doc. No. 172 at 8 (citing U.S.S.G. § 1B1.13(2)). But since we decided Mr. Martin's first Motion, our Court of Appeals—and every appellate court to consider the issue—has held policy statement 1B1.13 "explicitly limits its application to Bureau-initiated motions," and "is not applicable—and not binding—for courts considering prisoner-initiated motions." *Andrews*, --- F.4th ---, 2021 WL 3852617, at *3 (collecting appellate decisions); *see also United States v. Briggs*, No. 06-715, 2021 WL 872761, at *3 (E.D. Pa. Mar. 8, 2021) ("Thus, as a majority of district courts and all of the courts of appeals that have spoken on the issue have held, § 1B1.13 is not an 'applicable policy statement' in the context of defendant-filed motions."). We may still consider the Commission's policy statements to define "extraordinary and compelling reasons," which is an "amorphous phrase." *Andrews*, --- F.4th ---, 2021 WL 3852617, at *3. We still consider whether Mr. Martin is a "danger to others and the community."

[44] 18 U.S.C. § 3582(c)(1)(A)(i).

[45] *United States v. Smith*, No. 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[46] ECF Doc. No. 179 at 13.

[47] *Id.* at 28.

[48] *Id.* at 22–28.

[49] ECF Doc. No. 183 at 2–15.

[50] ECF Doc. No. 179 at 11–22.

[51] ECF Doc. No. 183 at 3.

[52] ECF Doc. No. 187 at 3–6.

[53] *United States v. Roper*, No. 16-335, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) (quoting *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020)).

[54] *United States v. Collier*, No. 14-00051, 2020 WL 6682655, at *2 (W.D. Pa. Nov. 12, 2020) (quoting *United States v. Somerville*, No. 2:12-225, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020)).

[55] *Briggs*, 2021 WL 872761, at *3; *see also Andrews*, --- F.4th ---, 2021 WL 3852617, at *3 ("[A] grant of compassionate release is a purely discretionary decision.").

[56] *See, e.g.*, *United States v. Jenkins*, No. 10-00196, 2021 WL 4099909, at *2 (W.D.N.C. Sept. 8, 2021); *United States v. Carter*, No. 16-235, 2021 WL 3725425, at *2–3 (D. Md. Aug. 20, 2021); *United States v. Sherrod*, No. 19-20139, 2021 WL 3473236, at *3–5 (E.D. Mich. Aug. 6, 2021).

[57] *Sherrod*, 2021 WL 3473236, at *5.

[58] *Carter*, 2021 WL 3725425, at *3.

[59] *Jenkins*, 2021 WL 4099909, at *2.

[60] *See id.*; *Carter*, 2021 WL 3725425, at *4.

[61] *See, e.g.*, *United States v. Jones*, No. 17-214, 2021 WL 4120622, at *2 n.3 (S.D.N.Y. Sept. 9, 2021); *United States v. Gibbs*, No. 96-539-2, 2021 WL 3929727, at *3 (E.D. Pa. Sept. 2, 2021); *United States v. Proge*, No. 12-20052-06, 2021 WL 3857440, at *1 (E.D. Mich. Aug. 30, 2021); *United States v. Graf*, No. 13-54, 2021 WL 3856087, at *1 (E.D. Wis. Aug. 27, 2021); *United States v. Roux*, No. 09-10022, 2021 WL 3774687, at *2–3 (C.D. Ill. Aug. 25, 2021), *appeal filed* (Sept. 8, 2021); *United States v. Johnson*, No. 02-310, 2021 WL 3737681, at *7 n.4 (D.D.C. Aug. 24, 2021), *appeal filed* (Sept. 9, 2021); *United States v. Meza-Orozco*, No. 14-5246, 2021 WL 3630519, at *4 (W.D. Wash. Aug. 17, 2021); *United States v. Johnson*, No. 16-43, 2021 WL 3508818, at *3 n.10 (N.D. Ind. Aug. 10, 2021); *United States v. Hernandez*, No. 10-20055-01, 2021 WL 3472646, at *2 (D. Kan. Aug. 6, 2021); *United States v. Brown*, No. 90-113, 2021 WL 3206548, at *4 n.4 (E.D. Va. July 29, 2021), *appeal filed* (Aug. 3, 2021); *United States v. Long*, No. 99-0182, 2021 WL 3185600, at *5 (D.D.C. July 28, 2021); *United States v. Rocha-Carlon*, No. 114-00227, 2021 WL 3115229, at *6 (E.D. Cal. July 22, 2021).

[62] *See, e.g.*, *Jones*, 2021 WL 4120622, at *2 ("Indeed, recent data confirms that the COVID-19 vaccines dramatically reduce the risk of death or serious illness from the various variants of COVID-19, even the dreaded Delta Variant."); *Proge*, 2021 WL 3857440, at *1 ("[N]o studies about the Delta variant change the fact that '[t]he COVID-19 vaccines authorized in the United States are highly effective at preventing severe disease and death, including against the Delta variant.'" (quoting *Delta Variant: What We Know About the Science*, Centers for Disease Control and Prevention (Aug. 19, 2021))); *Meza-Orozco*, 2021 WL 3630519, at *4 (W.D. Wash. Aug. 17, 2021) ("The Court understands that the science is still evolving as to vaccine efficacy and the Delta variant, but it appears conclusively established that fully vaccinated individuals are reasonably protected from hospitalization and death.").

[63] *See, e.g.*, *Graf*, 2021 WL 3856087, at *1 (one inmate and zero staff with active COVID-19); *Roux*, 2021 WL 3774687, at *2 (zero inmates and two staff); *Johnson*, 2021 WL 3737681, at *7 (zero inmates and two staff).

[64] *See, e.g.*, *Roux*, 2021 WL 3774687, at *1–2 (obesity, diabetes mellitus, hypertension, hyperthyroidism, and heart disease); *Meza-Orozco*, 2021 WL 3630519, at *3 (hypertension, type 2 diabetes, hyperlipidemia, and obesity); *Long*, 2021 WL 3185600, at *2 (chronic kidney disease, prediabetes, hypertension, familial combined hyperlipidemia, age).

[65] *Gibbs*, 2021 WL 3929727, at *3.

[66] *Id.*

[67] *Id.*

[68] *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

[69] *Sherrod*, 2021 WL 3473236, at *5.

[70] *Proge*, 2021 WL 3857440, at *1 (internal quotations omitted).

[71] *United States v. Gadsden*, No. 09-305, 2021 WL 195267, at *7 (W.D. Pa. Jan. 20, 2021).

[72] *See United States v. Henderson*, No. 21-1653, 2021 WL 2156910, at *2 (3d Cir. May 27, 2021) (affirming denial of compassionate release where only one active case of COVID-19 was present at [defendant's] complex, meaning "the risk of [defendant] contracting COVID-19 was low").

[73] ECF Doc. No. 179 at 28.

[74] 18 U.S.C. § 3582(c)(1)(A)(i).

[75] 18 U.S.C. §§ 3553(a)(2)(A–D).

---

[76] ECF Doc. No. 172 at 8–15.

[77] *Id.*

[78] *Id.* at 1, 8.

[79] First Step Act of 2018, Pub. L. No. 115-391,132 Stat. 5194.

[80] ECF Doc. No. 179 at 25–28.

[81] ECF Doc. No. 179 at 24.

[82] ECF Doc. No. 179 at 22, 27.

[83] Mr. Martin also appears to argue we should invalidate his sentence because he has not committed a "serious drug felony." ECF Doc. No. 179 at 23. But the United States never charged Mr. Martin with drug-related crimes. *See* ECF Doc. No. 119-1.

[84] 18 U.S.C. § 3582(c)(1)(A).

[85] *Henderson*, No. 21-1653, 2021 WL 2156910, at *2 (3d Cir. May 27, 2021).

[86] *See, e.g.*, *id.* at *2 n.2 (a "previously rejected claim of sentencing error" may be raised only in a habeas petition); *United States v. Musgraves*, 840 F. App'x 11, 13 (7th Cir. 2021) ("[W]hether Musgraves committed a qualifying 'controlled substance offense' goes to the validity of the sentence, which is a hallmark use of § 2255(a)."); *United States v. Albanese*, No. 97-359, 2021 WL 2400762, at *3 (E.D. Pa. June 11, 2021) ("Convictions and sentences can be challenged on direct appeal or in the habeas forum, but not in a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A).").

We recognize changes to the law may be among the extraordinary and compelling reasons for release in combination with other factors. *See, e.g.*, *United States v. Adeyemi*, 470 F. Supp. 3d 489, 518 (E.D. Pa. 2020) ("We may consider whether a change in sentencing law . . . constitutes an extraordinary and compelling reason for release."). But Mr. Martin fails to show the First Step Act constitutes an extraordinary and compelling reason for his release because Congress's amendments do not concern his sentence under the three strikes law.

[87] *See id.* (citing 18 U.S.C. § 924(c)) (describing former stacking provisions).

[88] 18 U.S.C. § 924(c)(1)(C)(i).

[89] *See Martin*, 46 F. App'x at 120 ("Martin was sentenced to life imprisonment under 18 U.S.C. § 3559(c) ("Three Strikes" statute)"); ECF Doc. No. 119-3 at 1. Even had Judge Shapiro sentenced Mr. Martin under the Act, Mr. Martin's convictions for robbery and using a firearm in furtherance of a crime of violence had finalized when Judge Shapiro sentenced Mr. Martin for his second bank robbery. *See* ECF Doc. No. 137. Mr. Martin committed his second bank robbery fewer than two years after his release from custody for his previous bank robbery conviction. PSR ¶ 35.

[90] 18 U.S.C. § 3559(c)(1)(A)(i).

[91] 21 U.S.C. § 802(58).

[92] Congress defines "murder," whether a federal or state offense, as a serious violent felony. 18 U.S.C. § 3559(c)(2)(F)(i). "[M]urder" is "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). Mr. Martin received a conviction under a substantially similar Pennsylvania law. *Com. v. Bowden*, 309 A.2d 714, 717 (Pa. 1973) ("Murder is defined as an unlawful killing of another with malice aforethought.").

[93] Congress lists violations of 18 U.S.C. § 2113 as serious violent felonies in the three-strikes law. *See* 18 U.S.C. § 3559(c)(2)(F)(i).

[94] *See* PSR ¶¶ 33–34.

[95] The United States notes since we decided Mr. Martin's first motion, the Supreme Court held a criminal offense cannot count as a "violent felony" under the Armed Career Criminal Act if it "requires only a *mens rea* of recklessness." *Borden v. United States*, 141 S. Ct. 1817, 1821 (2021). Mr. Martin does not address *Borden* in his Motion or Reply. We decline to decide whether *Borden* invalidates Mr. Martin's sentence, as Mr. Martin did not raise the issue and he would need to raise it in a habeas petition. *See Albanese*, 2021 WL 2400762, at *3. The Court's decision in *Borden* appears limited to the Act, so it does not appear to apply to Mr. Martin's three-strikes sentence. *See, e.g.*, *id.* at 1823 ("The dispute turns on the definition of 'violent felony' in [the Act's] elements clause . . ."); *id.* at 1830 ("Nor does the classification of reckless crimes as 'violent felonies' comport with [the Act's] purpose."); *id.* at 1831 (questioning whether convictions for reckless crimes resulting from unsafe driving are "really ACCA predicates").